**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMARENDRA THUMMETI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) Case No. |
| Plaintiff, | ) ) ) ) CLASS ACTION |
| v. | ) ) ) |
| CENTURYLINK, INC., GLEN F. POST III and R. STEWART EWING JR., | ) COMPLAINT FOR VIOLATION OF THE ) FEDERAL SECURITIES LAWS ) ) |
| Defendants. | ) DEMAND FOR JURY TRIAL ) ) |

Plaintiff Amarendra Thummeti ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CenturyLink, Inc. ("CenturyLink" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired CenturyLink securities between February 27, 2014 and June 15, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      CenturyLink, Inc. provides various communications services to residential, business, wholesale, and governmental customers in the United States. It operates through two segments, Business and Consumer. The company offers broadband, Ethernet, colocation, video entertainment and satellite digital television services.

3.      Founded in 1968, the Company is headquartered in Monroe, Louisiana and its stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CTL."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) CenturyLink's policies allowed its employees to add services or lines to accounts without customer permission, resulting in millions of dollars in unauthorized charges to CenturyLink customers; (ii) accordingly, the Company's revenues were the product of illicit conduct and unsustainable; (iii) the foregoing illicit conduct was likely to subject CenturyLink to heightened

2

regulatory scrutiny; and (iv) as a result of the foregoing, CenturyLink's public statements were materially false and misleading at all relevant times.

5.      On June 16, 2017, *Bloomberg* published an article entitled "CenturyLink Is Accused of Running a Wells Fargo-Like Scheme".  The article reported on a lawsuit, recently filed in Arizona state superior court by former CenturyLink employee Heidi Heiser, alleging that Heiser "was fired for blowing the whistle on the telecommunications company's high-pressure sales culture that left customers paying millions of dollars for accounts they didn't request."  The *Bloomberg* article stated that Heiser "was fired days after notifying Chief Executive Officer Glen Post of the alleged scheme during a companywide question-and-answer session held on an internal message board."

6.      On this news, CenturyLink's share price fell $1.23, or 4.56%, to close at $25.72 on June 16, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). CenturyLink's common stock trades on the NYSE, located within this Judicial District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired CenturyLink securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant CenturyLink, Inc. is incorporated under the laws of Louisiana.  The Company's principal executive offices are located at 100 CenturyLink Drive, Monroe, Louisiana 71203.  CenturyLink's common stock trades on the NYSE under the ticker symbol "CTL."

14.    Defendant Glen F. Post III ("Post") founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Director.

15.    Defendant R. Stewart Ewing Jr. ("Ewing") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Executive Vice President and Assistant Secretary.

16.    The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     CenturyLink, Inc. provides various communications services to residential, business, wholesale, and governmental customers in the United States. It operates through two segments, Business and Consumer. The company offers broadband, Ethernet, colocation, video entertainment and satellite digital television services.

### Materially False and Misleading Statements Issued During the Class Period

18.     The Class Period begins on February 27, 2014, when CenturyLink filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2013 10-K"). For the quarter, CenturyLink reported net income of $239 million, or $0.41 per diluted share, on revenue of $4.54 billion, compared to net income of $233 million, or $0.37 per diluted share, on revenue of $4.58 billion for the same period in the prior year. For 2013, CenturyLink reported a net loss of $239 million, or $0.40 per diluted share, on revenue of $18.01 billion, compared to net income of $777 million, or $1.25 per diluted share, on revenue of $18.38 billion for 2012.

19.     In the 2013 10-K, CenturyLink stated, in relevant part:

**Products and Services**

Our products and services include local and long-distance, broadband, private line (including special access, which we market to wholesale and business customers), MLPS, data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, public access, wireless, video services and other ancillary services.

We offer our customers the ability to bundle together several products and services. For example, we offer integrated and unlimited local and long-distance services. Our customers can also bundle two or more services such as broadband, video (including DIRECTV through our strategic partnership), voice and Verizon

Wireless (through our strategic partnership) services. ***We believe our customers value the convenience and price discounts associated with receiving multiple services through a single company.***

. . .

**Sales and Marketing**

We maintain local offices in most of the larger population centers within our local service area. These offices provide sales and customer support services in the community. We also rely on our call center personnel to promote sales of services that meet the needs of our customers. ***Our strategy is to enhance our communications services by offering a comprehensive bundle of services and deploying new technologies to further enhance customer loyalty.***

(Emphases added.)

20.     The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.     On May 9, 2014, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  For the quarter, CenturyLink reported net income of $203 million, or $0.35 per diluted share, on revenue of $4.54 billion, compared to net income of $298 million, or $0.48 per diluted share, on revenue of $4.51 billion for the same period in the prior year.

22.     In the Q1 2014 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of communications services to our residential, business, governmental and wholesale customers. Our communications services include local and long-distance, broadband, private line (including special access), Multi-Protocol Label Switching ("MPLS"), data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, public access, wireless, video and other ancillary services. ***We strive to maintain our customer***

6

> ***relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***
(Emphasis added.)

23.     The Q1 2014 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On August 7, 2014, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q").  For the quarter, CenturyLink reported net income of $193 million, or $0.34 per diluted share, on revenue of $4.54 billion, compared to net income of $269 million, or $0.44 per diluted share, on revenue of $4.53 billion for the same period in the prior year.

25.     In the Q2 2014 10-Q, CenturyLink stated, in relevant part:

> We are an integrated communications company engaged primarily in providing an array of communications services to our residential, business, governmental and wholesale customers. Our communications services include local and long-distance, broadband, private line (including special access), Multi-Protocol Label Switching ("MPLS"), data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, public access, wireless, video and other ancillary services. ***We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***
(Emphasis added.)

26.     The Q2 2014 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.    On November 6, 2014, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q").  For the quarter, CenturyLink reported net income of $188 million, or $0.33 per diluted share, on revenue of $4.51 billion, compared to a net loss of $1.05 billion, or $1.76 per diluted share, on revenue of $4.52 billion for the same period in the prior year.

28.    In the Q3 2014 10-Q, CenturyLink stated, in relevant part:

> We are an integrated communications company engaged primarily in providing an array of communications services to our residential, business, governmental and wholesale customers. Our communications services include local and long-distance, broadband, private line (including special access), Multi-Protocol Label Switching ("MPLS"), data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, public access, wireless, video and other ancillary services. ***We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***

(Emphasis added.)

29.    The Q3 2014 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q31 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.    On February 24, 2015, CenturyLink filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2014 10-K").  For the quarter, CenturyLink reported net income of $188 million, or $0.33 per diluted share, on revenue of $4.44 billion, compared to net income of $239 million, or $0.41 per diluted share, on revenue of $4.54 billion for the same period in the prior year.  For 2014, CenturyLink reported net income of $772, or $1.36 per diluted share, on

revenue of $18.03 billion, compared to a net loss of $239 million, or $0.40 per diluted share, on revenue of $18.01 billion for 2013.

31.    In the 2014 10-K, CenturyLink stated, in relevant part:

**Products and Services**

Our products and services include local and long-distance, broadband, private line (including special access), MPLS, data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, video, wireless and other ancillary services.

We offer our customers the ability to bundle together several products and services. For example, we offer integrated and unlimited local and long-distance services. Our customers can also bundle two or more services such as broadband, video (including DIRECTV through our strategic partnership), voice and Verizon Wireless (through our strategic partnership) services. ***We believe our customers value the convenience and price discounts associated with receiving multiple services through a single company.***

. . .

**Sales and Marketing**

We maintain local offices in most of the larger population centers within our local service area. These offices provide sales and customer support services in the community. We also rely on our call center personnel to promote sales of services that meet the needs of our customers. ***Our strategy is to enhance our sales by offering a comprehensive bundle of services and deploying new technologies to further enhance customer loyalty.***

(Emphases added.)

32.    The 2014 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.    On May 6, 2015, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, CenturyLink reported net income of $192 million,

or $0.34 per diluted share, on revenue of $4.45 billion, compared to net income of $203 million, or $0.35 per diluted share, on revenue of $4.54 billion for the same period in the prior year.

34.     In the Q1 2015 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of communications services to our residential, business, governmental and wholesale customers. Our communications services include local and long-distance, broadband, private line (including special access), Multi-Protocol Label Switching ("MPLS"), data integration, managed hosting (including cloud hosting), colocation, Ethernet, network access, video, wireless and other ancillary services. *We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.*

(Emphasis added.)

35.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.     On August 6, 2015, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, CenturyLink reported net income of $143 million, or $0.26 per diluted share, on revenue of $4.42 billion, compared to net income of $193 million, or $0.34 per diluted share, on revenue of $4.54 billion for the same period in the prior year.

37.     In the Q2 2015 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of communications services to our residential and business customers. Our communications services include local and long-distance, broadband, private line (including special access), Multi-Protocol Label Switching ("MPLS"), data integration, managed hosting (including cloud hosting), colocation, Ethernet, network and public access, video, wireless and other ancillary services. *We strive to maintain our customer relationships by,*

> *among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.*

(Emphasis added.)

38.      The Q2 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.      On November 5, 2015, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  For the quarter, CenturyLink reported net income of $205 million, or $0.37 per diluted share, on revenue of $4.55 billion, compared to net income of $188 million, or $0.33 per diluted share, on revenue of $4.51 billion for the same period in the prior year.

40.      In the Q3 2015 10-Q, CenturyLink stated, in relevant part:

> We are an integrated communications company engaged primarily in providing an array of communications services to our residential and business customers. Our communications services include local and long-distance, high-speed Internet, Multi-Protocol Label Switching ("MPLS"), private line (including special access), data integration, Ethernet, colocation, managed hosting (including cloud hosting), network, public access, video, wireless and other ancillary services. *We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.*

(Emphasis added.)

41.      The Q3 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     On February 25, 2016, CenturyLink filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K").  For the quarter, CenturyLink reported net income of $338 million, or $0.62 per diluted share, on revenue of $4.48 billion, compared to net income of $188 million, or $0.33 per diluted share, on revenue of $4.44 billion for the same period in the prior year.  For 2015, CenturyLink reported net income $878 million, or $158 per diluted share, on revenue of $17.9 billion, compared to net income of $772 million, or $1.36 per diluted share, on revenue of $18.03 billion for 2014.

43.     In the 2015 10-K, CenturyLink stated, in relevant part:

**Products and Services**

Our products and services include local and long-distance voice, high-speed Internet, MPLS, private line (including special access), data integration, Ethernet, colocation, managed hosting (including cloud hosting), network, public access, video, wireless and other ancillary services.

We offer our customers the ability to bundle together several products and services. For example, we offer integrated and unlimited local and long-distance voice services. Our customers can also bundle two or more services such as high-speed Internet, video (including DIRECTV through our strategic partnership), voice and Verizon Wireless (through our strategic partnership) services. *We believe our customers value the convenience and price discounts associated with receiving multiple services through a single company.*

. . .

**Sales and Marketing**

We maintain local offices in most of the larger population centers within our local service area. These offices provide sales and customer support services in the community. We also rely on our call center personnel and a variety of channel partners to promote sales of services that meet the needs of our customers. *Our sales and marketing strategy is to enhance our sales by offering solutions tailored to the needs of our various customers and promoting our*

***brands.*** Our offerings include both stand-alone services and bundled services
designed to meet the needs of different customer segments.
(Emphases added.)

44.     The 2015 10-K contained signed certifications pursuant to SOX by the Individual

Defendants, stating that the financial information contained in the 2015 10-K was accurate and

disclosed any material changes to the Company's internal control over financial reporting.

45.     On May 5, 2016, CenturyLink filed a Quarterly Report on Form 10-Q with the

SEC, announcing the Company's financial and operating results for the quarter ended March 31,

2016 (the "Q1 2016 10-Q").  For the quarter, CenturyLink reported net income of $236 million,

or $0.44 per diluted share, on revenue of $4.4 billion, compared to net income of $192 million,

or $0.34 per diluted share, on revenue of $4.45 billion for the same period in the prior year.

46.     In the Q1 2016 10-Q, CenturyLink stated, in relevant part:

> We are an integrated communications company engaged primarily in
> providing an array of communications services to our residential and business
> customers. Our communications services include local and long-distance voice,
> high-speed Internet, Multi-Protocol Label Switching ("MPLS"), private line
> (including special access), data integration, Ethernet, colocation, managed hosting
> (including cloud hosting), network, public access, video, wireless and other
> ancillary services. ***We strive to maintain our customer relationships by, among
> other things, bundling our service offerings to provide our customers with a
> complete offering of integrated communications services.***

(Emphasis added.)

47.     The Q1 2016 10-Q contained signed certifications pursuant to SOX by the

Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was

accurate and disclosed any material changes to the Company's internal control over financial

reporting.

48.     On August 4, 2016, CenturyLink filed a Quarterly Report on Form 10-Q with the

SEC, announcing the Company's financial and operating results for the quarter ended June 30,

2016 (the "Q2 2016 10-Q"). For the quarter, CenturyLink reported net income of $196 million, or $0.36 per diluted share, on revenue of $4.4 billion, compared to net income of $143 million, or $0.26 per diluted share, on revenue of $4.42 billion for the same period in the prior year.

49.     In the Q2 2016 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of services to our residential and business customers. Our communications services include local and long-distance voice, broadband, Multi-Protocol Label Switching ("MPLS"), private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, Voice over Internet Protocol ("VoIP"), information technology and other ancillary services. ***We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***

(Emphasis added.)

50.     The Q2 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

51.     On November 4, 2016, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, CenturyLink reported net income of $152 million, or $0.28 per diluted share, on revenue of $4.38 billion, compared to net income of $205 million, or $0.37 per diluted share, on revenue of $4.55 billion for the same period in the prior year.

52.     In the Q3 2016 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of services to our residential and business customers. Our

communications services include local and long-distance voice, broadband, Multi-Protocol Label Switching ("MPLS"), private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, Voice over Internet Protocol ("VoIP"), information technology and other ancillary services. ***We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***

(Emphasis added.)

53.    The Q3 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

54.    On February 23, 2017, CenturyLink filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K"). For the quarter, CenturyLink reported net income of $42 million, or $0.08 per diluted share, on revenue of $4.29 billion, compared to net income of $338 million, or $0.62 per diluted share, on revenue of $4.48 billion for the same period in the prior year. For 2016, CenturyLink reported net income of $626 million, or $1.16 per diluted share, on revenue of $17.47 billion, compared to net income of $878 million, or $1.58 per diluted share, on revenue of $17.9 billion for 2015.

55.    In the 2016 10-K, CenturyLink stated, in relevant part:

**Products and Services**

. . .

Our products and services include local and long-distance voice, broadband, MPLS, private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, VoIP, information technology and other ancillary services.

We offer our customers the ability to bundle together several products and services. For example, we offer integrated and unlimited local and long-distance voice services. Our customers can also bundle two or more services such as broadband, video (including DIRECTV through our strategic partnership), voice and Verizon Wireless (through our strategic partnership) services. ***We believe our customers value the convenience and price discounts associated with receiving multiple services through a single company.***

. . .

**Sales and Marketing**

We maintain local offices in most of the larger population centers within our local service area. These offices provide sales and customer support services in the community. We also rely on our call center personnel and a variety of channel partners to promote sales of services that meet the needs of our customers. ***Our sales and marketing strategy is to enhance our sales by offering solutions tailored to the needs of our various customers and promoting our brands.*** Our offerings include both stand-alone services and bundled services designed to meet the needs of different customer segments.

(Emphases added.)

56.    The 2016 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

57.    On May 5, 2017, CenturyLink filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  For the quarter, CenturyLink reported net income of $163 million, or $0.30 per diluted share, on revenue of $4.21 billion, compared to net income of $236 million, or $0.44 per diluted share, on revenue of $4.4 billion for the same period in the prior year.

58.    In the Q1 2017 10-Q, CenturyLink stated, in relevant part:

We are an integrated communications company engaged primarily in providing an array of services to our residential and business customers. Our communications services include local and long-distance voice, broadband, Multi-

16

Protocol Label Switching ("MPLS"), private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, Voice over Internet Protocol ("VoIP"), information technology and other ancillary services. ***We strive to maintain our customer relationships by, among other things, bundling our service offerings to provide our customers with a complete offering of integrated communications services.***

(Emphasis added.)

59.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

60.     The statements referenced in ¶¶ 18-59 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) CenturyLink's policies allowed its employees to add services or lines to accounts without customer permission, resulting in millions of dollars in unauthorized charges to CenturyLink customers; (ii) accordingly, the Company's revenues were the product of illicit conduct and unsustainable; (iii) the foregoing illicit conduct was likely to subject CenturyLink to heightened regulatory scrutiny; and (iv) as a result of the foregoing, CenturyLink's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

61.     On June 16, 2017, *Bloomberg* published an article entitled "CenturyLink Is Accused of Running a Wells Fargo-Like Scheme". The *Bloomberg* article reported, in relevant part:

A former CenturyLink Inc. employee claims she was fired for blowing the whistle on the telecommunications company's high-pressure sales culture that left **customers paying millions of dollars for accounts they didn't request**, according to a lawsuit filed this week in Arizona state superior court.

. . .

The plaintiff, Heidi Heiser, worked from her home for CenturyLink as a customer service and sales agent from August 2015 to October 2016. The suit claims she was fired days after notifying Chief Executive Officer Glen Post of the alleged scheme during a companywide question-and-answer session held on an internal message board.

The complaint alleges **CenturyLink "allowed persons who had a personal incentive to add services or lines to customer accounts to falsely indicate on the CenturyLink system the approval by a customer of new lines or services." This would sometimes result in charges that hadn't been authorized by customers**, according to the complaint.

. . .

Heiser's complaint alleges that she became increasingly concerned about what she observed at CenturyLink after news of Wells Fargo & Co.'s regulatory troubles broke in September. In that case, Wells Fargo employees opened deposit and credit card accounts without customers' consent to earn incentives and meet sales goals. Without admitting wrongdoing, Wells Fargo ended up firing more than 5,000 employees and agreeing to pay $185 million in fines, in addition to compensating customers for fees related to the unauthorized accounts.

**The complaint likens what Heiser said CenturyLink sales agents did to the Wells Fargo scandal and estimated the alleged unauthorized fees amounted to "many millions" of dollars.** She says her concerns were bolstered by posts she had read on review websites.

A review of Yelp and Pissed Consumer finds evidence of irate customers. "They signed me up unauthorized," wrote Sierrah U. of Bend, Ore., on Yelp in February 2015. "I was talking to someone interested in signing up two weeks ago after realizing my modem was incapable I told the guy I didn't want to sign up and I would call back later if I was still interested, he got really upset hung up on me. Two weeks later I receive a bill! With a ton a fees, I don't even have internet with them!"

When a customer complained about an unauthorized charge, customer service and sales agents like Heiser were directed "to inform the complaining customer that

CenturyLink's system indicated the customer had approved the service," according to the complaint, and as a result "it was really the customer's word against CenturyLink."

***"CenturyLink is going to be in a world of hurt if this turns out to be true,"*** said Roger Entner, an analyst with Recon Analytics.

Initially, Heiser told her direct superiors about her suspicions and was told in response to her complaints to "stay positive and not to mention her concerns again," according to the complaint. Heiser didn't report her concerns to the Federal Communications Commission or the Occupational Safety and Health Administration, a division of the U.S. Department of Labor.
. . .
"When sales targets are unrealistic and employees' livelihoods are at stake, some people are going to take shortcuts," said Entner, the telecom analyst. ***"Companies have the responsibility to make sure the goals are realistic. You don't want to drive people to break the law."***

(Emphases added.)

62.    On this news, CenturyLink's share price fell $1.23, or more than 4.5%, to close at $25.72 on June 16, 2017.

63.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired CenturyLink securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CenturyLink securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by CenturyLink or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CenturyLink;

- whether the Individual Defendants caused CenturyLink to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of CenturyLink securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

70.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- CenturyLink securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold CenturyLink securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

73.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of CenturyLink securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire CenturyLink securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

76.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for CenturyLink securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CenturyLink's finances and business prospects.

77.    By virtue of their positions at CenturyLink, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In

addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

78.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of CenturyLink, the Individual Defendants had knowledge of the details of CenturyLink's internal affairs.

79.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of CenturyLink.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to CenturyLink's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of CenturyLink securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning CenturyLink's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired CenturyLink securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

80.    During the Class Period, CenturyLink securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of CenturyLink securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CenturyLink securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of CenturyLink securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

81.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

83.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     During the Class Period, the Individual Defendants participated in the operation and management of CenturyLink, and conducted and participated, directly and indirectly, in the conduct of CenturyLink's business affairs.  Because of their senior positions, they knew the adverse non-public information about CenturyLink's misstatement of income and expenses and false financial statements.

85.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to CenturyLink's financial condition and results of operations, and to correct promptly any public statements issued by CenturyLink which had become materially false or misleading.

86.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which CenturyLink disseminated in the marketplace during the Class Period concerning CenturyLink's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause CenturyLink to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of CenturyLink within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of CenturyLink securities.

87.     Each of the Individual Defendants, therefore, acted as a controlling person of CenturyLink.  By reason of their senior management positions and/or being directors of CenturyLink, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, CenturyLink to engage in the unlawful acts and conduct complained

of herein.  Each of the Individual Defendants exercised control over the general operations of CenturyLink and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

88.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CenturyLink.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 21, 2017

Respectfully submitted,

**POMERANTZ LLP**
*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  212-661-1100
Facsimile:  212-661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  312-377-1181
Facsimile:  312-377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

CENTURYLINK, INC. CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

| Submission Date | 2017-06-20 08:42:28 |
|---|---|

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against CenturyLink, Inc.  ("CenturyLink" or the "Company"), and authorize the filing of a motion on my behalf for appointment as lead plaintiff.
3. I did not purchase or acquire CenturyLink securities at the direction of counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired CenturyLink securities during the Class Period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. To the best of my current knowledge, the transactions set forth below represent all of my transactions in CenturyLink securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve or served as a representative party on behalf of a Class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class as ordered or approved by the Court.
8. I declare, under penalty of perjury, that the foregoing is true and correct.

| My Products | |
|---|---|
| **Print Name** | Amarendra Thummeti |

**Acquisitions:**

| Date Acquired MM/DD/YYYY | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 10/31/2016 | 300 | 26.54 |
| 11/18/2016 | 84 | 24.43 |
| 2/23/2017 | 380 | 24.75 |

**Sales: (if none, write '0')**

| Number of Shares Sold | Price per Share Sold |
|---|---|
| 0 | 0 |

**Draw your signature using your mouse.**



Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Please continue to the next page of certification below.

| Full Name | Amarendra Reddy Thummeti |
| --- | --- |


(redacted)

**CENTURYLINK, INC. (CTL)**                                    **Thummeti, Amarendra**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 10/31/2016 | Purchase | 300 | $26.5400 |
| 11/18/2016 | Purchase | 84 | $24.4300 |
| 2/23/2017 | Purchase | 380 | $24.7500 |